# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 17, 2010

Lyle W. Cayce
Clerk

No. 08-40261

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT ARBUCKLE,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CR-198-ALL

Before SMITH, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Robert Arbuckle pleaded guilty on the day of trial to two counts in a 152-count indictment: conspiracy to commit wire fraud and aggravated identity theft (Count 1) in violation of 18 U.S.C. § 371 and conspiracy to commit money laundering (Count 45) in violation of 18 U.S.C. § 1956. As part of a plea agreement, he expressly waived his right to appeal his conviction and sentence on any ground. In addition, he reserved the right to challenge only the failure of the district court, after accepting the plea agreement, to impose a sentence in

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

accordance with the terms of the agreement and to bring a claim of ineffective assistance of counsel that affects the validity of the appeal waiver. The parties agreed that "the appropriate sentence for the defendant is 120 months of imprisonment followed by a term of five years of supervised release."

Arbuckle moved to withdraw his guilty plea on the ground that it was not knowingly or voluntarily entered because the plea agreement incorrectly noted that the applicable statutory maximum penalty for Count 1 was 20 years, when the correct statutory maximum penalty is actually five years, and because the error was perpetuated by the district court at the plea hearing. Arbuckle also asserted that the plea agreement incorrectly reflected that the applicable term of supervised release for each offense was five years when the correct term of supervised release for each offense is not more than three years. The district court denied Arbuckle's motion to withdraw his guilty plea and sentenced him to concurrent terms of five years of imprisonment on Count 1 and 120 months of imprisonment on Count 45, and to two concurrent three-year terms of supervised release.

On appeal, Arbuckle argues that (1) his guilty plea was involuntary because the district court did not define the term "proceeds" to ensure that he understood the elements of the offense to which he was pleading guilty, (2) the district court abused its discretion in failing to permit him to withdraw his guilty plea because his guilty plea was invalid, and (3) the government deprived him of the right to sell assets to pay for his defense in violation of his Sixth Amendment right to counsel. For the following reasons, we affirm the district court's judgment.

We note, as an initial matter, that Arbuckle's waiver-of-appeal provision does not bar his attacks on the validity of his guilty plea and appeal waiver. Although a defendant may waive his statutory right to appeal in a valid plea agreement, *see United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992), a waiver of appeal is not valid unless both the defendant's guilty plea and the

waiver of appeal were knowingly and voluntarily entered, *United States v. Robinson*, 187 F.3d 516, 517 (5th Cir. 1999) ("Although a defendant may waive his right to appeal as part of a plea agreement with the [g]overnment, this waiver must be informed and voluntary." (internal quotation marks and citation omitted)).[1]

Arbuckle's challenge to the district court's failure to define "proceeds" stems from the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020 (2008), in which a four-justice plurality concluded that "proceeds" under § 1956 means "profits" rather than "gross receipts." *Id.* at 2025. Unlike the plurality, however, Justice Stevens, who provided the decisive fifth vote for this position, "did not consider this definition to be the statute's definition of 'proceeds' in *all* criminal contexts. . . . He would interpret 'proceeds' in the statute to mean one thing in some criminal contexts and another thing in other criminal contexts." *United States v. Brown*, 553 F.3d 768, 783 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2812 (2009). Furthermore, the plurality and the dissent disagreed as to the proper characterization of Justice Steven's concurrence. *Id.* at 783-84. Accordingly, at the time the district court rendered its decision in this case, this court recognized that "[t]he precedential value of *Santos* is unclear outside the narrow factual setting of that case, and the

---

[1] This court has also recognized that "[a] trial court cannot enter judgment on a plea of guilty unless it is satisfied that there is a factual basis for the plea," and therefore, this court has power to review a plea "if the factual basis for the plea fails to establish an element of the offense which the defendant pled guilty to." *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) (internal quotation marks and citations omitted). Arbuckle, however, does not assert that the plea lacks a factual basis. Rather, Arbuckle urges that he "did not plead knowingly and voluntarily" because the district court deprived him of the "opportunity to consider with knowledge whether he was truly guilty of money laundering" by failing to define the term "proceeds."

decision raises as many issues as it resolves for the lower courts."[2] *Id*. at 783 (citing *Santos*, 128 S. Ct. at 2020).

Because Arbuckle did not object to the district court's failure to define "proceeds" or otherwise object to the elements of the offense, we review this claim for plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *see United States v. Fernandez*, 559 F.3d 303, 316 (5th Cir.), *cert. denied*, 130 S. Ct. 139 (2009). "Such a review requires that there be error, that is plain, that affects the defendant's substantial rights. Even then, the court must determine that the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings' in order to correct it." *Fernandez*, 559 F.3d at 316 (citation omitted). Thus, Arbuckle must "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

Here, any error by the district court in not defining the term "proceeds" could not have been clear or obvious because the law governing the definition of proceeds under § 1956 was unclear at the time the district court rendered its decision. *See Fernandez*, 559 F.3d at 316. Moreover, Arbuckle has failed to provide any evidence, other than mere conclusory statements, that he would not have agreed to plead guilty and accept the 120-month sentence but for the district court's failure to define the term "proceeds." *See Dominguez Benitez*, 542 U.S. at 76. Indeed, Arbuckle's bare assertions ring particularly hollow given that even if he could prove his innocence as to Count 45 under the profits definition of "proceeds," he still faced 151 other counts if he proceeded to trial, which together carried a potential sentence of well over 100 years. Accordingly,

---

[2] Approximately one year after *Santos*, Congress amended the money-laundering statute to provide a definition of the term "proceeds." Fraud Enforcement and Regulatory Act of 2009, Pub. L. No. 111-21, § 2(f)(1)(B), 123 Stat. 1617, 1618 (2009) (defining proceeds to "mean[] any property derived from or obtained or retained directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."); *see also* 18 U.S.C. § 1956(c)(9). Accordingly, *Santos* only applies to pre-amendment cases because Congress has resolved the "proceeds" question for cases brought after May 20, 2009.

Arbuckle has not established the district court's failure to define the term "proceeds" as "profits" constitutes plain error.

Arbuckle next argues that the district court abused its discretion in denying his motion to withdraw his guilty plea. Here, the district court would have been within its discretion to withdraw Arbuckle's guilty plea. It is well established that "a district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a "'fair and just reason.'" *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003) (citation omitted); *see also* Fed. R. Crim. P. 11(d)(2). Arbuckle, however, has no absolute right to withdraw his plea, and "[t]he burden of establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant." *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996) (citation omitted). "A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion." *Powell*, 354 F.3d at 370 (citation omitted); *see also United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998) ("A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." (citation omitted)).

The district court should consider seven factors when deciding whether to allow a defendant to withdraw his guilty plea: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984). The district court, however, "is not required to make findings as to each of the *Carr* factors." *Powell*, 354 F.3d at 370 (citation omitted). Rather, the court's decision should be based on the totality of circumstances. *Id*. "No single factor or

combination of factors mandates a particular result." *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991).

Arbuckle argues that the district court, in considering the *Carr* factors, did not give sufficient weight to the fact that he was misinformed about the correct statutory maximum for Count 1 prior to pleading guilty, which demonstrated that his plea was not knowing and voluntary and that he did not have close assistance of counsel. He also argues that his guilty plea was involuntary because it was based on promises made by the government, it was induced by his numerous jail transfers, and it was the result of counsel's ineffective assistance. Finally, he contends that he asserted his innocence, that the government has not shown that it would be extraordinarily prejudiced, that any delay in filing the motion should not be held against him, and that granting the motion would not inconvenience the court or waste judicial resources.

Our review of the *Carr* factors reveals no abuse of discretion by the district court. Although Arbuckle initially asserted his innocence prior to the trial date, he subsequently admitted the factual elements of the offense, he pleaded guilty at the plea hearing, and his plea was accepted by the district court. Moreover, Arbuckle was cross-examined during the hearing on the motion to withdraw his plea and he again stipulated to the admissions he made at the plea hearing. Accordingly, his subsequent declaration of guilt "carrie[s] a strong presumption of verity." *See United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) ("Because solemn declarations in open court carry a strong presumption of verity, the district court did not abuse its discretion in placing little weight on [the defendant's] assertion of innocence." (internal quotation marks and citations omitted)).

In addition, after learning of the error in the plea agreement, which had been perpetuated at the Rule 11 hearing, Arbuckle delayed more than six weeks before moving to withdraw his guilty plea. *See United States v. Adam*, 296 F.3d 327 (5th Cir. 2002) (affirming denial of motion to withdraw guilty plea where

defendant gave notice to withdraw two weeks after entering the plea); *Carr*, 740 F.2d at 345 (affirming denial of motion to withdraw guilty plea where defendant gave notice to withdraw three weeks after entering the plea). Moreover, the court had set aside three weeks to try the case, and the government had prepared for trial and made arrangements to bring witnesses from various parts of the country. In fact, the government had already transported some of the witnesses to Texas and would either be required to hold the witnesses over in Texas indefinitely or pay a second time for their transportation to the courthouse. Given that Arbuckle waited until the day of trial to plead guilty, such additional expenditures likely would inconvenience the government. In addition, this court has recognized the inconvenience that rescheduling a trial places on the district court. *See, e.g., Carr*, 740 F.2d at 345 (determining that rescheduling a two-to-three-week trial "would have inconvenienced the trial court by disrupting its docket"); *McKnight*, 570 F.3d at 650 (noting that even the rescheduling of a two-day trial "does not necessitate a finding that there is no inconvenience to the district court").

Although the remaining *Carr* factors—i.e., the validity of the original plea and whether Arbuckle received the close assistance of counsel—present a closer question, our review of these factors convinces us that Arbuckle's guilty plea was knowing and voluntary and that he had close assistance of counsel. With respect to the validity of Arbuckle's guilty plea, Rule 11 requires, *inter alia*, that the district court inform the defendant about "any maximum possible penalty, including imprisonment" before it accepts the plea. Fed. R. Crim. P. 11(b)(1)(H). Any variance from the Rule 11 procedures is subject to a harmless-error analysis, and we review such challenges *de novo. United States v. Lujano-Perez*, 274 F.3d 219, 224 (5th Cir. 2001). If the district court failed to comply with Rule 11, we consider whether the court's "noncompliance affected the defendant's substantial rights such that 'knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead

7

guilty.'" *Id.* (quoting *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (en banc)).

The district court did not comply with Rule 11(b)(1)(H) when it failed to inform Arbuckle of the correct statutory maximum term of imprisonment and supervised release for Count 1. Arbuckle's bare assertion that he would not have pleaded guilty if he had known that Count 1 carried only a five-year statutory maximum, however, is unconvincing. Count 45 alone carried a 20-year maximum term of imprisonment, *see* § 1956(a), and any sentence imposed for Count 1 would have run concurrently with Count 45. Further, as noted above, if Arbuckle had not entered into the plea agreement, he likely would have proceeded to trial on all 152 counts that day and would have faced a significantly higher maximum sentence than the one agreed upon in the plea agreement. In addition, Arbuckle points to no evidence supporting his assertion that he had a better defense as to the other counts. Thus, we conclude that the district court's Rule 11 error did not affect his substantial rights. *See United States v. Vasquez-Bernal*, 197 F.3d 169, 171 (5th Cir. 1999) (finding in light of the circumstances surrounding the plea hearing that it would be "absurd" to conclude that the defendant's alleged lack of knowledge about the consequences of his crime actually affected his decision to plead guilty).

To the extent that Arbuckle contends that the government's alleged failure to abide by an oral agreement also affected the validity of his plea or the plea agreement, the record does not reflect that Arbuckle's guilty plea rested "in any significant degree" on the alleged promise. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). At his plea hearing, Arbuckle specifically denied that anyone made any promises or inducements to him to get him to plead guilty. Moreover, by signing the plea agreement, he affirmed that (1) his plea was freely and voluntarily made, (2) his plea was not the result of

any promises other than those set forth in the agreement, (3) the plea agreement was "a complete statement of the parties' agreement," (4) the plea agreement "supersedes all other plea agreements," and (5) "[n]o other promises have been made or implied."

In contrast to the unambiguous statements made at his plea hearing and in the written plea agreement, Arbuckle asserts that had his father, Arbuckle Sr., been allowed to testify at the hearing on his motion to withdraw the guilty plea, he would have corroborated the existence of the alleged oral agreements. According to the proffer, which the court accepted but did not admit into evidence, Arbuckle Sr. would have testified that Mr. Cobb, one of Arbuckle's attorneys, represented to him that "if his son pled guilty . . . he probably wouldn't do any more than five by cooperating with the [g]overnment, and the likelihood that he would spend time in jail would be very, very low because he would have to have the computer and access to the Internet in order to help the government." When Arbuckle's trial counsel asked him about these issues at the hearing, the government objected because the subject-matter was outside the scope of Arbuckle's motion to withdraw his guilty plea, and the district court sustained the objection. Arbuckle, however, does not argue in his initial brief that the district court's ruling on this objection constituted error, plain or otherwise. Accordingly, we need not consider the issue because "[a]n appellant abandons all issues not raised and argued in [his] *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (citations omitted). Arbuckle, however, does not waive an ineffective assistance of counsel claim with respect to his trial counsel's failure to introduce Arbuckle Sr.'s testimony into evidence. Nevertheless, as explained below, we decline to review such ineffective assistance of counsel claims on direct appeal because the record is insufficiently developed. *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir. 1987); *see also United States v. Bounds*, 943 F.2d 541, 544 (5th Cir. 1991).

Arbuckle has also failed to demonstrate that the prosecutor "induced his guilty plea by clearly and unequivocally guaranteeing a lesser sentence or some other specific leniency." *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002) ("Where a defendant can show that the court, the prosecutor or defense counsel induced his guilty plea by clearly and unequivocally *guaranteeing* a lesser sentence or some other specific leniency, the guilty plea is not voluntary unless the defendant receives that which he was promised."), *abrogation on other grounds recognized by United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004). Nowhere in the plea agreement does the government guarantee that it would recommend any leniency. To the contrary, the agreement unequivocally provides that the recommendation of any such departure is in the government's "sole discretion" and that Arbuckle's cooperation "does not automatically require the United States to request a downward departure or a reduction in sentence." Furthermore, the plea agreement notified Arbuckle in bold text that "[i]t is entirely within the [c]ourt's discretion as to what, if any, reduction in sentence [Arbuckle] will receive." Similarly, Arbuckle has failed to demonstrate that his transfers between jail facilities induced him to plead guilty or hindered his ability to assist in his defense. Aside from bald assertions, Arbuckle provides no evidence that his jail transfers pressured him to plead guilty.

Finally, Arbuckle contends that his counsel was ineffective and that, as a result, he did not have close assistance of counsel. Particularly, Arbuckle claims that his trial counsel (1) failed to advise him as to the meaning of "proceeds" under § 1596, (2) performed little or no investigation, (3) failed to act on his request to develop evidence for his defense, and (4) threatened to disclose information covered by attorney-client privilege if Arbuckle continued to assert his attorney's incompetence. Insofar as Arbuckle raises claims of ineffective assistance of counsel distinct from his challenge to the district court's denial of his motion to withdraw his guilty plea, we decline to review them on direct appeal because the record is insufficiently developed. *United States v. Higdon*,

832 F.2d 312, 314 (5th Cir. 1987); *see also United States v. Bounds*, 943 F.2d 541, 544 (5th Cir. 1991).

Whether a defendant received ineffective assistance of counsel under the Sixth Amendment, however, is distinct from whether he had close assistance of counsel under Rule 11(d)(2)(B). *McKnight*, 570 F.3d at 646. Moreover, whether a defendant received close assistance of counsel is a fact-intensive inquiry. *Id. at* 646-47. Arbuckle testified at the plea hearing that (1) he had "a clear understanding . . . of what the results would be from [his] actions in court," (2) he was satisfied with the representations of his trial counsel, (3) he discussed the charges and the plea agreement with his attorney, (4) his attorney reviewed the government's evidence with him, (5) he was satisfied that his attorney fully considered his case and any possible defenses to the charges, (6) he was satisfied that his attorney put his interests first, and (7) there were no conflicts between him and his attorney.

Furthermore, the record in this case reflects that counsel filed numerous motions, such as a motion to continue the trial, motions for an expedited bond hearing, motions for discovery, a motion for medical treatment, a motion in limine, and a motion for sanctions. The record also reflects that counsel prepared questions to be presented to prospective jurors during voir dire and negotiated the plea agreement with the government. In addition, counsel's failure to correct the misstatement in the plea agreement or during the plea hearing, by itself, does not indicate that Arbuckle did not receive close assistance of counsel at the time he entered his plea. *See id*. at 647 (holding that counsel's failure to inform defendant that he would be subject to a career-offender enhancement did not demonstrate, in light of the record, that defendant did not receive close assistance of counsel). Accordingly, in light of the record as a whole, Arbuckle has failed to show that he did not receive close assistance of counsel at the time he entered his guilty plea.

Having considered the *Carr* factors, we conclude that Arbuckle has failed to show a "fair and just reason" to change his guilty plea under the totality of the circumstances. Therefore, the district court did not abuse its discretion in denying the motion.

As to Arbuckle's third claim that he was denied his right to sell assets, because the claim does not fall within an exception to his knowing and voluntary waiver of appeal, we conclude that the claim is barred. *See United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997) ("So long as a plea is informed and voluntary, we will enforce a waiver of appeal." (citation omitted)); *see also United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) ("To determine whether an appeal of a sentence is barred by an appeal waiver provision in a plea agreement, we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." (citation omitted)).

Accordingly, the judgment of the district court is AFFIRMED.